## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Robert Schak, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Bank of America N.A.; Bank of America Corporation,<br><br>Defendants. | Case No. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Robert Schak ("Plaintiff"), individually and on behalf of all others similarly situated ("Class" or "Class Members"), by his attorneys, files this Class Action Complaint ("Complaint") against Defendants Bank of America N.A. and Bank of America Corporation ("Bank of America" or "Bank" or "Defendant"). The following allegations are based on personal knowledge as to Plaintiff's own conduct and on the investigation conducted by his counsel as to all other allegations.

## NATURE OF THE ACTION

1.      In July 2023, the Consumer Financial Protection Bureau (CFPB) and the Office of Comptroller of Currency (OCC) (jointly, the "Agencies") fined[1] Bank of America for (a)

---

[1] Consumer Financial Protection Bureau, "*CFPB Takes Action Against Bank of America for Illegally Charging Junk Fees, Withholding Credit Card Rewards, and Opening Fake Accounts*," (July 11, 2023), https://www.consumerfinance.gov/about-us/newsroom/bank-of-america-for-illegally-charging-junk-fees-withholding-credit-card-rewards-opening-fake-accounts/?n=@#:~:text=%E2%80%93%20Today%2C%20the%20Consumer%20Financial%20Protection%20Bureau%20%28CFPB%29,to%20open%20accounts%20without%20customer%20knowledge%20or%20authorization (accessed July 12, 2023); *see also In the Matter of Bank of*

"wrongfully with[holding] credit card rewards," (b) charging multiple non-sufficient fund fees for the same transaction, also referred to as "double-dipping," and (c) misappropriat[ing] sensitive personal information to open credit card accounts without customers' knowledge or authorization.[2] As a result, the CFPB levied a $90 million penalty[3] and the OCC levied an additional $60 million penalty against the Bank.[4] The Agencies actions remedied some of the Bank's harm—mainly the double-dipping scheme—but not all.

2.      According to the Agencies, Bank of America's most recent illegal conduct "harmed hundreds of thousands of consumers,"[5] and took place over a decade.

3.      Plaintiff Robert Schak brings this class action complaint, alleging that Bank of America's conduct, as described below, violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681b(f), the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq*., the Electronic Funds Transfer Act (EFTA), 15 U.S.C. § 1693 *et seq.*,  the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 Ill. Comp. Stat. 505/1, *et seq.*, the Illinois Unsolicited Credit Card Act, 815 Ill. Comp. Stat. 150/1 *et seq.*, and Common Law Unjust Enrichment.

4.      Plaintiff brings this action on behalf of himself, and on behalf all others similarly situated, and seeks monetary damages, declaratory, injunctive and equitable relief, including restitution, the reasonable costs of attorneys' fees, and any other relief the Court deems proper.

---

*America, N.A.*, CFPB No. 2023-CFPB-0006 Dkt. 2 (July 11, 2023); CFPB No. 2023-CFPB-0007 Dkt. 1 (July 11, 2023).
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*

## JURISDICTION AND VENUE

5.      This Court has personal jurisdiction over the Defendant because: (a) the Defendant transacted business throughout the United States, including in this District; (b) the Defendant's illegal conduct took place in this District; (c) the Defendant maintained substantial aggregate contacts with the United States as a whole, including in this District; (d) the Defendant has substantial contact in various states in the United States of America, including in this District; and (e) the Defendant's illegal conduct had a direct, causal, substantial, and reasonably foreseeable effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.  The Defendant also conducts business throughout the United States, including in this District, and has purposefully availed itself of the laws of the United States.

6.      This Court has subject matter jurisdiction over all claims brought by the Plaintiff, and on behalf of the Class, pursuant to 28 U.S.C. § 1332(d)(2), as this is a class action, upon information and belief the matter in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, and Plaintiff and the Class Members are citizens of states different from Defendant.

7.      This Court is the proper venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

8.      Plaintiff Robert Schak is an individual citizen of the United States residing in Elk Grove Village, Illinois. Mr. Schak was an accountholder with LaSalle Bank, which was acquired by Bank of America in 2007. Following Bank of America's acquisition, Mr. Schak moved his accounts to a different bank. In or around October, 2022, multiple (more than ten) credit card inquiries appeared on Mr. Schak's credit report. Several Bank of America credit cards were opened

in Mr. Schak's name, which he did not apply for and which he never received. Those credit cards did, however, appear on Mr. Schak's Transunion credit report.

9.      Defendant Bank of America is a publicly traded, global financial services firm and a Fortune 500 corporation that is incorporated in the State of Delaware, with its principal place of business in Charlotte, North Carolina. As of 2022, Bank of America has consolidated assets of approximately $2.5 trillion. The Bank provides banking services to approximately 68 million individuals and business clients, across its approximately 4,000 branches, and 17,000 ATMs. Bank of America operates 124 branches in the State of Illinois, approximately half of which are in the Chicago metropolitan area.

## GENERAL ALLEGATIONS AGAINST BANK OF AMERICA

10.     Bank of America is one of the largest and most sophisticated financial institutions in the world. The Bank holds approximately $2.5 trillion in assets and opens millions of new credit accounts and products each year. In fact, Bank of America opened approximately 4.4 million new accounts last year and approximately 3.6 million new accounts the year prior.[6]

11.     Despite the Bank's sophistication, the Bank has repeatedly been held accountable for its fraudulent, unfair, and deceptive treatment of millions of its consumers.

12.     For example, in 2014, the CFPB found the Bank to have engaged in deceptive marketing, illegally charging approximately 1.9 million consumer accounts, and levied more than $720 million in economic consequences against the Bank.[7] The Head of the CFPB at the time

---

[6]  Bank of America, Securities and Exchange Commission Annual Report (Form 10-K) (2022)
[7] Consumer Financial Protection Bureau, "*CFPB Orders Bank of America to Pay $727 Million in Consumer Relief for Illegal Credit Card Practices*" (April 9, 2014), https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-bank-of-america-to-pay-727-million-in-consumer-relief-for-illegal-credit-card-practices/ (accessed July 17, 2023).

noted "Bank of America both deceived customers and unfairly billed consumers" in violation of federal law.[8]

13.     In 2022, the CFPB brought an enforcement action against Bank of America for unlawfully freezing customer accounts, and inserting unenforceable language into consumer contracts that purported to limit their rights.[9]

14.     Later in 2022, the CFPB and the OCC again fined Bank of America—for $225 million—for unlawfully freezing customers' accounts and impacting the disbursement of unemployment benefits.[10]

15.     Despite these previous admonishments, Bank of America was caught violating the law again.  On July 11, 2023, the CFPB filed yet another order against Bank of America.  This time, the CFPB and the OCC ordered Bank of America to (i) stop opening unauthorized credit card accounts in customers names without their knowledge or authorization, (ii) stop charging repeat non-sufficient funds fees in the future, and (iii) provide cash and points rewards on credit cards as advertised.

---

[8] *Id.*

[9] Consumer Financial Protection Bureau, "*CFPB Orders Bank of America to Pay $10 Million Penalty for Illegal Garnishments*," (May 4, 2022), https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-bank-of-america-to-pay-10-million-penalty-for-illegal-garnishments/ (accessed July 17, 2023).

[10] Consumer Financial Protection Bureau, "*Federal Regulators Fine Bank of America $225 Million Over Botched Disbursement of State Unemployment Benefits at Height of Pandemic*," (July 14, 2022), https://www.consumerfinance.gov/about-us/newsroom/federal-regulators-fine-bank-of-america-225-million-over-botched-disbursement-of-state-unemployment-benefits-at-height-of-pandemic/ (accessed July 17, 2023).

**Bank of America Fraudulently Submitted Credit Card Applications On Behalf of Consumers Without Their Knowledge or Consent**

16. Between January 12, 2012 through Present ("Class Period"), Bank of America offered a series of financial products and services to its customers, including savings accounts, checking accounts, and credit cards.

17. During that same period, as part of its employee evaluations, the Bank considered the number of *new* consumer financial products or services that were opened. In other words, the Bank's financial center employees were incentivized—with financial rewards—to increase the amount of new financial products or services that were opened.

18. Consequently, in response to the Bank's incentives, and pressure to increase product sales, Bank employees began illegally accessing consumers' credit reports, illegally submitting credit card applications on behalf of consumers, and illegally issuing credit cards on behalf of consumers—all *without* those consumers' knowledge or consent.

19. The harm to the Plaintiff, and all others similarly situated, includes, but is not limited to, adverse impacts on consumer credit reports and consequential damages that result therefrom, and service fees charged or related to unauthorized accounts.

20. The Bank was unjustly enriched by the opening of these credit card accounts, to which consumers did not consent.

**Bank of America Actively and Fraudulently Concealed Their Conduct**

21. Throughout the Class Period, the Bank, effectively, affirmatively, and fraudulently concealed their illegal conduct from Plaintiff and the other Class Members. The Bank fraudulently concealed its illegal conduct through various means and methods.

22. Plaintiff and other Class Members had neither actual nor constructive knowledge of the facts constituting their claim for relief.

6

23.     Plaintiff and other Class Members did not discover, and could not have discovered, the Bank's illegal conduct at an earlier date by the exercise of reasonable diligence because of the fraudulent practices and techniques of secrecy employed by the Bank.

24.     As a result of the Bank's fraudulent concealment of its illegal conduct, the running of any statute of limitations has been tolled with respect to the claims that Plaintiff and the Class Members allege herein.

## CLASS ALLEGATIONS

25.     The Class that Plaintiff seeks to represent is defined as ("Class Definition"):

All persons in the United States whose sensitive personal information was unlawfully misappropriated or used by Bank of America, its agents or employees, during the Class Period to open credit card accounts without those persons' knowledge or authorization.

26.     **Numerosity:** Members of the Class are so numerous that individual joinder is impracticable. Moreover, the Class is composed of an easily ascertainable, self-identifying set of individuals who were impacted by Bank of America's illegal and deceptive conduct. The precise number of Class Members can be ascertained through discovery, which will include Defendant's records. Plaintiff estimates the number of Class Members to be in, at least, the thousands. The disposition of their claims through a class action will benefit both the parties and this Court. The proposed Class Members are ascertainable because they are defined by reference to objective criteria. In addition, and upon information and belief, the names and addresses of all members of the proposed Class can be identified in business records in Defendant's possession, custody, or control.

27.     **Commonality:** There are questions of law and fact common to the Class that will materially advance the litigation, and these common questions predominate over any questions affecting only individual Class Members. Among the questions common to the Class are:

a. Whether Defendant used or obtained consumers' credit reports, without permission of the Class Members, to complete credit card applications;

c. Whether Defendant processed credit card applications based upon the information Defendant obtained from consumers' credit reports, which were obtained without consumer permission;

d. Whether Defendant's conduct violates the Fair Credit Reporting Act;

e. Whether Defendant's conduct violates the Truth in Lending Act;

f. Whether Defendant's conduct violations the Electronic Funds Transfer Act;

g. Whether Defendant's conduct violates the Illinois Consumer Fraud and Deceptive Business Practices Act;

h. Whether Defendant violated the Illinois Unsolicited Credit Card Act;

i. Whether Defendant's actions constitute a misleading or a deceptive act in the conduct of any trade or commerce under state consumer protection law; and

j. Whether Plaintiff and the other Class Members are entitled to monetary damages, equitable relief, including, but not limited to, restitution and/or injunctive relief.

28. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of Defendant's conduct. All of Plaintiff's claims are typical of the claims of the Class because Plaintiff and all Class Members were injured in the same manner by Defendant's uniform course of conduct described herein. Plaintiff and all Class Members have the same claims against Defendant relating to the conduct alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class Members. Plaintiff and all Class Members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendant's wrongful conduct as described

8

herein. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class Members.

29. **Adequate Representation:** Plaintiff will fairly and adequately protect the interests of the Class Members and has no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions.

30. **Predominance:** This class action is appropriate for certification because questions of law and fact common to the Class Members predominate over questions affecting only individual members.

31. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all Class Members is impracticable. Given the amount at issue for each Class Member, individual suits would not be economically viable; in addition, should individual Class Members bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the judicial system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court.

32. Because of the relatively small size of the typical individual Class Members' claims, it is unlikely that individual Class Members could afford to seek recovery on their own. This is especially true in light of the size and resources of Defendant. A class action is, therefore, the only reasonable means by which Class Members can obtain relief.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA)
### 15 U.S.C. § 1681b(f)

33.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

34.     Under the FCRA, a person "shall not use or obtain a consumer report for any purpose unless—(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished[.]" 15 U.S.C. 1681b(f).

35.     The Defendant willfully obtained and/or used  the Plaintiff's and Class Members' consumer reports without a permissible purpose or authorization in violation of  the FCRA.  *See* 15 U.S.C. § 1681b(f).

36.     Plaintiff and the Class seek statutory damages of $1,000 *per violation*, as well as punitive damages, and any other relief the Court may allow.  *See* 15 U.S.C. § 1681n.

### SECOND CLAIM FOR RELIEF
### VIOLATION OF THE TRUTH IN LENDING ACT (TILA)
### 15 U.S.C. § 1601 *et seq.*

37.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

38.     Under TILA, "no credit card shall be issued except in respond to a request or application therefor."  15 U.S.C. § 1642.  Further, federal regulations prohibit a credit card from being issued to any person except in "response to an oral or written request or application for the card[.]"  Regulation Z, 12 C.F.R. § 1026.12(a).

39.     In violation of TILA and Regulation Z, Defendant issued credit cards in the names of Plaintiff and Class Members, without their knowledge or consent, and without a written or oral request or application for the cards.

40.     In violation of the TILA and Regulation Z, Defendant issued cards in Plaintiff's and Class Members' names that were not renewals of, or substitutes for, accepted credit cards.

41.     Plaintiff and the Class seek actual and statutory damages permitted under the law.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT (EFTA)
### 15 U.S.C. § 1693 *et seq.*

42.     Plaintiff and the Class Members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

43.     The EFTA, 15 U.S.C. § 1693, protects individual consumer rights relating to the electronic transfer of funds.

44.     Under the EFTA, "No person may issue to a consumer any card, code, or other means of access to such consumer's account for the purpose of initiating an electronic fund transfer other than – (1) in response to a request or application therefor; or (2) as a renewal of, or in substitution for, an accepted card, code, or other means of access, whether issued by the initial issuer or a successor."  15 U.S.C. § 1693i(a).

45.     By creating means of access to consumer credit card accounts created without permission (or request) from the consumer, and not due to the renewal or substitution or a pre-existing credit card, Bank of America violated the EFTA.

46.     Under the EFTA, Bank of America is liable for actual damages, an amount to be determined by the Court as well as attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS**
**PRACTICES ACT (ICFA)**
**815 ILL. COMP. STAT. 505/1,** *et seq***.**
(ON BEHALF OF THE ILLINOIS CLASS)

47.     Plaintiff and the Class Members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

48.     The ICFA protects consumers from "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." *See* 815 Ill. Comp. Stat. 505/2.

49.     Under the ICFA, use of such unfair or deceptive acts or practices within any trade or commerce are "declared unlawful whether any person has in fact been misled, deceived or damaged thereby" 815 Ill. Com. Stat. 510/2.

50.     Bank of America accessed consumers' credit reports without request or prior authorization.

51.     After accessing consumer credit reports without authorization, Bank of America opened credit card accounts in consumers' names without those consumers' knowledge or authorization, in violation of the ICFA.

52.     Under the ICFA, Bank of America is liable for injunctive relief along with attorneys' fees and costs.

53.     Plaintiff and the Class seek any arising damages permitted under the statute or as the court may allow.

**FIFTH CLAIM FOR RELIEF**
**VIOLATION OF ILLINOIS UNSOLICITED CREDIT CARD ACT OF 1977**
**815 ILL. COMP. STAT. 150/1,** *et seq.*
(ON BEHALF OF THE ILLINOIS CLASS)

54.     Plaintiff and the Class Members incorporated by reference each preceding and succeeding paragraph as though fully set forth herein.

55.     Under the Illinois Unsolicited Credit Card Act of 1977, "no financial institution or other person or corporation doing business in this State shall issue any person a credit card, regardless of whether such credit card is to be used for personal, family, household, agricultural, business or commercial purposes, except (1) in response to a request or application therefor; or (2) as a renewal of, or in substitution for, an accepted credit card whether such card is issues by the same or a successor card issuer". 815 Ill. Comp. Stat. 150/3.

56.     In violation of the Illinois Unsolicited Credit Card Act of 1977, Defendant issued credit cards in the names of Plaintiff and Class Members', without their knowledge or consent, and without a request or application for the cards.

57.     In violation of the Illinois Unsolicited Credit Card Act of 1977, Defendant issued cards in the Plaintiff's and Class Members' names that were not renewals of, or substitutes for, accepted credit cards.

58.     Plaintiff and the Class Members seek actual and statutory damages permitted under the law.

**SIXTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**

59.     Plaintiff and the Class Members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

13

60.     Defendant received a benefit from Plaintiff and Class Members in the form, among other things, new revenue lines for the Bank as a result of the illegally opened accounts.

61.     Retention of these benefits by Defendant would be unjust and inequitable because Defendant received these benefits by engaging in a false, deceptive, and misleading scheme as described in this Complaint.

62.     The benefits, in whole or in part, that Defendant received were not legitimately earned and came at the expense of Plaintiff and other Class Members.

63.     Plaintiff and the Class seek any arising damages as the Court may allow.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

A.     For an Order certifying this action as a class action and appointing Plaintiff and his Counsel to represent the Class;

B.     For an award of actual, statutory, and compensatory damages in an amount to be determined;

C.     For an award of costs of suit and attorneys' fees, as allowable by law; and

D.     Such other and further relief as this court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

Dated: August 25, 2023                    Respectfully submitted,

                              BY:    /s/ Kara A. Elgersma
                                     Kara A. Elgersma (#6273628)
                                     **WEXLER BOLEY & ELGERSMA LLP**
                                     311 S. Wacker Drive, Suite 5450
                                     Chicago, IL 60606
                                     Telephone: (312) 346-2222
                                     kae@wbe-llp.com

                                     Daniel E. Gustafson (*pro hac* forthcoming)
                                     Daniel J. Nordin (*pro hac* forthcoming)
                                     Abou B. Amara, Jr. (*pro hac* forthcoming)
                                     **GUSTAFSON GLUEK PLLC**
                                     Canadian Pacific Plaza
                                     120 South Sixth Street, Suite 2600
                                     Minneapolis, MN 55402
                                     Telephone: (612) 333-8844
                                     dgustafson@gustafsongluek.com
                                     dnordin@gustafsongluek.com
                                     aamara@gustafsongluek.com

                                     Rebecca A. Peterson (*pro hac* forthcoming)
                                     Robert K. Shelquist (*pro hac* forthcoming)
                                     **LOCKRIDGE GRINDAL NAUEN PLLP**
                                     100 Washington Avenue South, Suite 2200
                                     Minneapolis, MN 55401
                                     Telephone:  (612) 339-6300
                                     rapeterson@locklaw.com
                                     rkshelquist@locklaw.com

                                     ***Attorneys for Plaintiff and the Proposed
                                     Class***